IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KYLE LYNN, on behalf of Himself and Others Similarly Situated, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 5:14-cv-17-DAE |
| DRILL CUTTINGS DISPOSAL COMPANY, LLC, | § § § | |
| Defendant. | § § | |

**DEFENDANT'S MOTION TO COMPEL ARBITRATION**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, Defendant Drill Cuttings Disposal Company, LLC ("DCDC") and files this Motion to Compel Arbitration.  In support thereof, DCDC respectfully shows this Honorable Court the following:

**INTRODUCTION & BACKGROUND FACTS**

1.     Joseph Gutierrez ("Gutierrez") originally initiated this litigation on January 1, 2014 by filing his Complaint in which he alleged DCDC violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA") by failing to comply with its overtime requirements.[1]  In addition to bringing the FLSA claim on behalf of himself, the Complaint sought to establish a collective action on behalf of "all other similarly situated workers who were paid on DCDC's day rate system."[2]  On January 29, 2014, Gutierrez filed notice that Ronald Romain, Kyle Lynn, and Benjamin Saunders had consented to opt-in as party plaintiffs.[3]

---

[1] *See* Complaint at ¶ 1.  (Doc 1).
[2] Complaint at ¶ 5.
[3] *See* Docs 5, 6.

2.      On May 30, 2014, the parties filed their scheduling recommendations with

the Court, in which the following was expressly noted:

- DCDC had "advised Plaintiffs of its intention to file a motion to dismiss the case due to arbitration agreements that have been executed";[4]

- "Counsel for the parties intend[ed] to submit a proposed stipulation dismissing the claims of Mr. Gutierrez, Mr. Saunders and Mr. Romain due to the arbitration agreements they signed";[5] and

- DCDC had advised plaintiffs' counsel that Kyle Lynn also signed an arbitration agreement, which DCDC had not been able to locate.[6]

3.      On June 16, 2014, Gutierrez filed his Plaintiff's Unopposed Motion to

Amend Complaint in which he acknowledged that, because he "signed an arbitration

agreement with Drill Cuttings Disposal Company [… he would] be proceeding before an

arbitrator rather than this Court."[7]  The motion also requested that Kyle Lynn "be

substituted in as named plaintiff."[8]  On June 17, 2014, the Court granted the request to

file an amended complaint.

4.      As requested in the motion to amend, the First Amended Complaint

substituted Kyle Lynn ("Lynn") as the named plaintiff seeking to bring the FLSA claim

as a collective action "on behalf of himself and all other similarly situated workers who

were paid on DCDC's day rate system."[9]  On July 7, 2014, Lynn filed notice that Daniel

Salazar had consented to opt-in as a party plaintiff.[10]

5.      On July 22, 2014, the parties, through their respective attorneys of record,

filed a Stipulation of Dismissal with Respect to Certain Plaintiffs in which they agreed

---

[4] *See* Scheduling Recommendations at page 1.  (Doc 12).
[5] *Id.*
[6] *Id.*
[7] Plaintiff's Unopposed Motion to Amend Complaint at page 1.  (Doc 14).
[8] *Id.*
[9] First Amended Complaint (the "Amended Complaint") at ¶ 5.  (Doc 16).
[10] Doc 17.

**DEFENDANT'S MOTION TO COMPEL ARBITRATION**                                              **PAGE 2**

Gutierrez, Benjamin Saunders, and Ronald Romain "should be dismissed" because they signed arbitration agreements with DCDC.[11]

6.      Lynn subsequently filed notice that Robert Haley, Eric White, Shawn Sonnier, and Kenneth Navarre had consented to opt-in as party plaintiffs on August 22, August 27, August 29, and October 2, 2014, respectively.[12]

7.      Via emails sent January 12 and 13, 2015, counsel for DCDC provided plaintiffs' attorney with copies of arbitration agreements executed by Daniel Salazar, Robert Haley, Eric White, Shawn Sonnier, and Kenneth Navarre.[13]  Despite the fact that all of these individuals signed arbitration agreements, plaintiffs' counsel stated that these plaintiffs will not voluntarily dismiss their claims and proceed with arbitration as was done previously with Gutierrez, Benjamin Saunders, and Ronald Romain.  As such, DCDC files the instant motion requesting the Court compel arbitration as required by the agreements executed by each of the plaintiffs.

## ARGUMENT & AUTHORITIES

### A.      The Federal Arbitration Act.

8.      The Federal Arbitration Act (the "FAA") applies to arbitration agreements involving interstate commerce.[14]   In addition, the FAA "expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of

---

[11] Stipulation of Dismissal with Respect to Certain Plaintiffs at page 1.  (Doc 20).  It appears a separate stipulation of dismissal, identical in form and substance, was filed one day prior.  *See* Doc 19.
[12] *See* Docs 21, 22, 23, and 24.
[13] *See* Email dated January 12, 2015 with attached agreements, attached hereto as Exhibit "2," and incorporated herein by reference; *see* Email dated January 13, 2015 with attached agreement, attached hereto as Exhibit "3," and incorporated herein by reference.
[14] 9 U.S.C. § 2; *Mendez v. New Bell Gen. Servs., L.P.*, 727 F. Supp. 2d 585, 590 (W.D. Tex. 2010).  The Amended Complaint recognizes that the plaintiffs' employment involved interstate commerce.  *See* Amended Complaint at ¶ 9.

**DEFENDANT'S MOTION TO COMPEL ARBITRATION**                                                              **PAGE 3**

claims should be resolved in favor of arbitration."[15]  In this regard, the Supreme Court has stated that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."[16]  Moreover, the Supreme Court has also expressed a specific preference in favor of arbitration in the context of labor disputes.[17]

**B.      The incorporation of the AAA rules requires that the Court submit this matter to arbitration.**

9.          "Ordinarily, whether a claim is subject to arbitration must be decided in the first instance by a court, not an arbitrator."[18]   "Parties may agree, however, to arbitrate whether a particular claim is subject to arbitration so long as they clearly and unmistakably do so in their agreement."[19]   An arbitration agreement satisfies this standard where it incorporates the rules of the American Arbitration Association (the "AAA"), which themselves empower "the arbitrator 'to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.'"[20]  *See also Halliburton Energy Servs., Inc. v. BJ Servs. Co.*, No. 2:08–cv–475–TJW, 2010 WL 2991031, at *3 (E.D. Tex. July 28, 2010) ("Likewise, numerous other courts have held that 'when a contract contains or incorporates

---

[15] *Little v. Technical Specialty Products, LLC*, No. 4:11-CV-717, 2012 WL 695719, at *2 (E.D. Tex. Feb. 8, 2012) *report and recommendation adopted,* 2012 WL 695717 (E.D. Tex. Mar. 1, 2012) (quoting *Wash. Mut. Fin. Grp., LLC v. Bailey,* 364 F.3d 260, 263 (5th Cir. 2004)); *see also Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983) (stating that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").
[16] *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960).
[17] *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 550 (1964) (noting "preference of national labor policy for arbitration as a substitute for tests of strength between contending forces").
[18] *Douglas v. Regions Bank*, 757 F.3d 460, 465 (5th Cir. 2014) (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649 (1986)).
[19] *Id*. (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)).
[20] *Id*. (quoting *Petrofac, Inc. v. DynMcDermott Petrol. Operations Co.,* 687 F.3d 671, 675 (5th Cir. 2012)).

[the AAA rules], it clearly and unmistakably vests the arbitrator, and not the district court, with authority to decide which disputes are subject to arbitration.'"[21]

10.     The language of the arbitration clause involved in the instant litigation requires that any disputes "be settled by the American Arbitration Association under its Employment Dispute Resolution Rules."[22]  The applicable AAA rules delegate to the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement."[23]  As such, a determination as to the arbitrability of the instant dispute is a question for the arbitrator to decide, not this Court.

**C.     Even if this Court declines to enforce the incorporation of the AAA rules, the plaintiffs' claims must nevertheless be arbitrated.**

11.     In deciding a motion to compel arbitration, "courts must answer two questions to determine arbitrability: first, did the parties agree to arbitrate; second, does any federal statute or policy render the claim nonarbitrable."[24]  With respect to the first question–whether there is a valid agreement to arbitrate–courts apply "ordinary state-law principles that govern the formation of contracts."[25]  "The second question of scope,

---

[21] bracketed material in original (quoting *Bollinger Shipyards Lockport LLC v. Northrop Grumman Ship Sys., Inc.,* 2009 WL 86704, *5 (E.D. La. Jan. 12, 2009) (collecting cases)).

[22] *See generally*, Affidavit of Jeffrey Reddoch, Jr., attached hereto as Exhibit "1," and incorporated herein by reference; *see also* Daniel Salazar agreement, attached to the Affidavit of Jeffrey Reddoch, Jr. as Exhibit "1-A," and incorporated herein by reference; *see also* Robert Haley agreement, attached to the Affidavit of Jeffrey Reddoch, Jr. as Exhibit "1-B," and incorporated herein by reference; *see also* Eric White agreement, attached to the Affidavit of Jeffrey Reddoch, Jr. as Exhibit "1-C," and incorporated herein by reference; *see also* Shawn Sonnier agreement, attached to the Affidavit of Jeffrey Reddoch, Jr. as Exhibit "1-D," and incorporated herein by reference; *see also* Kenneth Navarre agreement, attached to the Affidavit of Jeffrey Reddoch, Jr. as Exhibit "1-E," and incorporated herein by reference; *see also* Kyle Lynn agreement, attached to the Affidavit of Jeffrey Reddoch, Jr. as Exhibit "1-F," and incorporated herein by reference.

[23] American Arbitration Association Labor Arbitration Rule 3(a), *available at* http://www.adr.org/labor.

[24] *Newpark Shipbuilding-Pelican Island, Inc. v. Rig Pan Producer*, 261 F. Supp. 2d 756, 758 (S.D. Tex. 2003) (citing *Primerica Life Ins. Co. v. Brown,* 304 F.3d 469, 471 (5th Cir. 2002) (citing *R.M. Perez & Assoc. v. Welch,* 960 F.2d 534, 538 (5th Cir. 1992))).

[25] *Graves v. BP Am., Inc.,* 568 F.3d 221, 222 (5th Cir. 2009) (quoting *First Options,* 514 U.S. at 944).

---

however, is answered 'by applying the federal substantive law of arbitrability.'"[26]  If a court determines a dispute is subject to arbitration, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."[27]

12.      The facts of the instant case are similar to those before the court in *Hampton v. ITT Corp.*[28]  In *Hampton*, the plaintiffs filed suit claiming their employers failed to pay them for overtime hours worked in violation of the FLSA.[29]  The employers responded by filing a motion to compel arbitration to enforce the arbitration agreements as set out in the following language of each of the plaintiffs' employment contracts:

> "[EMPLOYER] and EMPLOYEE agree that any dispute between them or claim by either against the other or any agent or affiliate of the other shall be resolved by binding arbitration."[30]

13.      In answering the first question applicable to a motion to compel arbitration–whether the parties agreed to arbitrate–the court found "[t]he language of the arbitration clause is broad and covers the employment dispute over the payment of wages allegedly due for overtime work."[31]  With respect to the second question–whether any federal statute or policy render the claim nonarbitrable–the court determined "[t]he fact that plaintiffs' suit is based on the Fair Labor Standards Act does not preclude arbitration."[32]  Based on the foregoing, the court held "that the arbitration agreements

---

[26] *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626 (1985) (quoting *Moses*, 460 U.S. at 24)).
[27] *Little*, 2012 WL 695719, at *2 (quoting *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985)).
[28] *See generally*, *Hampton v. ITT Corp.*, 829 F. Supp. 202 (S.D. Tex. 1993).
[29] *Id.* at 203.
[30] *Id.*
[31] *Id.* at 204 (citing *R.M. Perez & Assocs.,* 960 F.2d at 538).
[32] *Id.*

are enforceable as to all the claims made the basis of this suit."[33]   Other courts have

come to the same conclusion.  *See Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 506 (4th

Cir. 2002) ("We therefore hold that FLSA claims may properly be resolved in mandatory

arbitration proceedings").

14.        The facts applicable to this Court's determination of the instant motion to

compel arbitration are indistinguishable from those before the court in *Hampton*.

Specifically, each of the plaintiffs' employment contracts contains the following

language with respect to arbitration:

> "By signing below, you agree that any controversy or claim arising out of
> or relating to your employment [...] shall be settled by arbitration."[34]

The broad language of the plaintiffs' agreements clearly covers the pending employment

dispute over the payment of wages, brought under to the FLSA.  In addition, there is no

federal policy or statute which renders plaintiffs' FLSA claims nonarbitrable.  To the

contrary, federal courts have expressly ruled that FLSA claims can be covered by

binding arbitration agreements.  Based on the foregoing, the FAA mandates that this

Court direct the parties to proceed to arbitration.[35]

**D.      Case law supports this Court compelling Lynn to arbitrate
even though DCDC has been unable to locate a copy of the
arbitration agreement he signed.**

15.        The Court should compel Lynn to submit his claim to arbitration even in

the absence of DCDC producing a copy of the arbitration agreement Lynn signed.  In

confronting a similar situation, the court in *Lemus v. CMH Homes, Inc.* noted the

following:

---

[33] *Hampton*, 829 F. Supp. at 204.
[34] *See* Arbitration Agreements attached as Exhibits "1-A" through "1-F."
[35] *See Little*, 2012 WL 695719, at *2.

"In deciding whether the parties had an agreement to arbitrate, the Court applies the contract law of the state governing the agreement."[36]  "Under Texas law, when a contract cannot be located, it is still enforceable if its terms can be shown by clear and convincing parol evidence."[37]  "In addition, Fifth Circuit case law indicates that a party attempting to enforce an arbitration agreement that has been lost or destroyed may use affidavit evidence to demonstrate the existence of the agreement."[38]

16.     Applying the law to the facts the court held that, even though a written arbitration agreement could not be located, the affidavits submitted by the defendants were sufficient to prove the existence and terms of an agreement by the parties to arbitrate.[39]  Based on the foregoing, the court granted the defendants' motion to compel arbitration.[40]

17.     As in *Lemus*, DCDC has offered the testimony of its president to establish the existence and terms of Lynn's arbitration agreement.[41]  This affidavit testimony establishes the following:

a.      DCDC has a policy that all employees execute a written employment contract to memorialize the terms of employment with DCDC;[42]

b.      DCDC has developed a standard employment agreement for this purpose;[43]

c.      The requirement that all disputes be settled through arbitration has always been included in DCDC's standard employment agreement;[44]

d.      DCDC located a copy of the contract that it signed and provided to Lynn for his signature;[45]

---

[36] *Lemus v. CMH Homes, Inc.*, 798 F. Supp. 2d 853, 861 (S.D. Tex. 2011) (citing *Wash. Mut. Fin. Group,* 364 F.3d at 264).
[37] *Id.* (citing *Bituminous Cas. Corp. v. Vacuum Tanks, Inc.,* 975 F.2d 1130, 1132 (5th Cir. 1992) (citing FED. R. EVID. 1004)); *In re Estate of Berger,* 174 S.W.3d 845, 847 (Tex. App.–Waco 2005, no pet.); *Bank of Am. v. Haag,* 37 S.W.3d 55, 58 (Tex. App.–San Antonio 2000, no pet.)).
[38] *Id.* (citing *Banks v. Mitsubishi Motors Credit of Am.,* 435 F.3d 538, 540-41 (5th Cir. 2005) (applying Mississippi law)).
[39] *Id.* at 861-62.
[40] *Id.* at 863.
[41] *See generally*, Affidavit of Jeffrey Reddoch, Jr.
[42] *Id.* at ¶ 3.
[43] *Id.*
[44] *Id.*

      e.      Despite an exhaustive search, DCDC has been unable to locate the copy of the employment agreement signed by Lynn;[46] and

      f.      Although DCDC has not been able to locate it, Lynn would have been required to execute DCDC's standard employment agreement as a condition of his employment and consistent with DCDC's policies and procedures.[47]

These facts, taken together, are sufficient to establish the existence and terms of a written agreement by Lynn to arbitrate his claims.  Accordingly, this Court should compel Lynn to arbitrate.

## E.   Class arbitration is precluded by Supreme Court precedent.

18.   Supreme Court precedent requires the plaintiffs to arbitrate their claims on an individual basis.  The Supreme Court has held that because arbitration "is a matter of consent, not coercion[, …] a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so."[48]  More specifically, the Supreme Court stated that "[a]n implicit agreement to authorize class-action arbitration, however, is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate.  This is so because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator."[49]  *Stolt-Nielsen*, therefore, requires that the plaintiffs be compelled to arbitrate their claims on an individual basis.

---

[45] *Id*. at ¶ 4.
[46] *Id*.
[47] *Id*.
[48] *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681-84 (2010) (*emphasis original*).
[49] *Id*. at 685.

**CONCLUSION & PRAYER**

19.      As addressed above, the claims alleged by and on behalf of all plaintiffs in the above-styled and –numbered cause are subject to valid arbitration agreements. Moreover, the incorporation of the AAA rules dictates that a determination as to whether plaintiffs' claims are subject to the arbitration agreements is a question for the arbitrator to decide, not this Court.  Irrespective of the tribunal answering this question, the facts set out above establish that the plaintiffs agreed to arbitrate their claims made the basis of the instant lawsuit.  For the foregoing reasons, DCDC contends plaintiffs should be compelled to arbitrate.

20.      WHEREFORE, PREMISES CONSIDERED, DCDC respectfully prays that this Honorable Court enter an order granting DCDC's Motion to Compel Arbitration and referring each of the plaintiffs to an individual arbitration in accordance with their agreements and Supreme Court precedent, and granting DCDC any and all further relief to which it may show itself justly entitled.

Respectfully submitted,

MARIS & LANIER, P.C.


  /s/ Matthew W. Lindsey
Robert F. Maris
State Bar No. 12986300
rmaris@marislanier.com
Matthew W. Lindsey
State Bar No. 24071893
mlindsey@marislanier.com
3710 Rawlins Street, Suite 1550
Dallas, Texas 75219
214-706-0920 telephone
214-706-0921 facsimile

ATTORNEYS FOR DEFENDANT
DRILL CUTTINGS DISPOSAL
COMPANY, LLC

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for DCDC conferred with Rex Burch, counsel for plaintiffs, and that Mr. Burch stated he is opposed to the relief requested in this Motion to Compel Arbitration.


  /s/ Matthew W. Lindsey
Matthew W. Lindsey

## CERTIFICATE OF SERVICE

This is to certify that a true, correct and complete copy of the foregoing document has been served in accordance with the Federal Rules of Civil Procedure on the 29th day of January, 2015 to:

Richard J. (Rex) Burch
BRUCKNER BURCH PLLC
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
**VIA CM/ECF ELECTRONIC FILING**

  /s/ Matthew W. Lindsey
Matthew W. Lindsey


224.001\s:\robert\drill cuttings\pleadings\compel-arbitration.mtn.docx